1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          17 CR 48 (VEC)

5   STANISLAV LISOV,

6              Defendant.                  Sentence

7   ------------------------------x

8                                          New York, N.Y.
                                           November 21, 2019
9                                          10:20 a.m.

10  Before:

11

12                    HON. VALERIE E. CAPRONI,

13                                         District Judge

14                          APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
         Southern District of New York
16  BY:  MICHAEL NEFF
         Assistant United States Attorney
17
18  BUKH LAW FIRM, PLLC
         Attorneys for Defendant
19  BY:  ARKADY L. BUKH
         GEORGE C. GRASSO

20  Also Present:
    Yana Agoureev, Interpreter (Russian)
21

22

23

24

25

1              (Case called)

2              MR. NEFF:  Good morning, your Honor, Michael Neff for

3     the government.

4              THE COURT:  Good morning.

5              MR. BUKH:  Good morning, your Honor, Arkady Bukh for

6     Mr. Lisov.

7              MR. GRASSO:  Good morning, your Honor, George C.

8     Grasso for Mr. Lisov as well.

9              THE COURT:  Mr. Grasso, have you filed a notice of

10    appearance in this case?

11             MR. GRASSO:  I have not, unless my office has already

12    filed it.  I'm honestly not sure.  But I would be happy to file

13    one right now.

14             THE COURT:  Just file one today.

15             MR. GRASSO:  Sure.  No problem.

16             THE COURT:  By the close of business.  Don't forget.

17             MR. GRASSO:  You got it.

18             THE COURT:  Mr. Lisov, are you going to need the

19    interpreter?

20             THE DEFENDANT:  I think not, your Honor.

21             THE COURT:  You think not.  Let's do this.  Let's

22    swear in the interpreter just in case.

23             (Interpreter sworn)

24             THE COURT:  Can you state your name for the record.

25             THE INTERPRETER:  Yes, your Honor.  Yana Agoureev.

 1              THE COURT:  Is everybody ready to proceed?

 2              MR. NEFF:  Yes, your Honor.

 3              MR. GRASSO:  Yes, your Honor.

 4              THE COURT:  Mr. Lisov, have you read the presentence

 5    report, dated October 4, 2019?

 6              THE DEFENDANT:  Yes, I do, your Honor.

 7              THE COURT:  Do you read English well enough to read

 8    it?

 9              THE DEFENDANT:  Yes, I do.

10              THE COURT:  Have you discussed it with your attorneys?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Are there any objections to the

13    presentence report?

14              MR. GRASSO:  No, your Honor.

15              THE COURT:  Mr. Grasso or Mr. Bukh.

16              MR. BUKH:  No.

17              THE COURT:  The presentence report will be made part

18    of the record in this matter and placed under seal.  If an

19    appeal is taken, counsel on appeal may have access to the

20    sealed report without further application to this Court.

21              I received a sentencing submission from the defense,

22    dated November 11, 2019, that included an e-mail from the

23    defendant and a number of letters from family and friends of

24    the defendant.  And I received a letter last night clarifying

25    one point of controversy.  I received a letter from the

 1    government, dated November 7, 2019.

 2          The next step is the guidelines calculation.  I know

 3    that we had members of the press here.  Just so you understand,

 4    the guidelines calculation is a required step in a sentencing.

 5    It's going to sound a little bit like gobbledygook, but it's

 6    required.

 7          The defendant pled guilty to one count of conspiracy.

 8    The presentence report reflects a guideline level of 31,

 9    criminal history category I.  The guideline range is well above

10    the statutory maximum of five years.

11          I find the correct guidelines calculation is as

12    follows:  The guideline for conspiracy cross-references to the

13    underlying substantive offense.  The applicable guidelines for

14    computer hacking is the theft guideline and that's a base

15    offense level of 6.  Because the defendant is responsible for

16    an intended loss between 3.5 million and 9.5 million, pursuant

17    to 2B1.1(b)(1)(J), that's plus 18.  Because the crime had more

18    than 10 victims, pursuant to 2B1.1(b)(2)(A)(i), that's plus

19    two.  Because the crime was primarily committed outside of the

20    United States and because the crime involved sophisticated

21    means that the defendant intentionally participated in,

22    pursuant to 2B1.1(b)(10)(B) and (C), that's plus two.  Because

23    the underlying substantive offense that the defendant conspired

24    to commit involved an intent to obtain personal information,

25    pursuant to 2B1.1(b)(18)(A), that's plus two.  Because the

1    defendant was convicted of a conspiracy to violate 18 U.S.C.

2    1030(a)(5)(A), pursuant to 2B1.1(b)(19)(A)(ii), that's plus

3    four.  The defendant pled guilty and accepted responsibility,

4    so that's minus three, bringing us to an adjusted offense level

5    of 31.  The defendant has no criminal history, so he is in

6    criminal history category I.

7            Level 31, criminal history category I yields a

8    guideline range of 108 to 135 months, but that's above the

9    statutory limit.  So the guideline is actually 60 months.

10           Are there any guidelines arguments that I have not

11   addressed?

12           MR. NEFF:  No, your Honor.

13           MR. GRASSO:  No, your Honor.

14           THE COURT:  I don't see a grounds for a departure

15   under the guidelines.

16           Are there any factual issues in dispute?

17           MR. NEFF:  Not from the government, your Honor.

18           THE COURT:  Mr. Bukh.

19           MR. GRASSO:  Judge, may we approach for a sidebar?

20           THE COURT:  Sure.

21           (Pages 6-9 SEALED)

22

23

24

25

1               (In open court)

2               THE COURT:  I have a question for the government,

3       which is that the losses that are in the presentence report and

4       the gain to the defendant, is that just a reflection of losses

5       in the United States or is that a worldwide figure, or do you

6       know?

7               It's going to sort of bleed into my second question,

8       which was, was Mr. Lisov only hacking into computers of

9       financial institutions in the United States or was this more

10      broadly a worldwide scheme?

11              MR. NEFF:  I don't believe the malware was limited to

12      the United States, but I am not certain, to the Court's

13      question, as to the calculation of loss.  I'm mindful that, as

14      the complaint emphasizes, I believe the focus of the underlying

15      investigation was principally into U.S. victims.

16              THE COURT:  And is the government confident that

17      Mr. Lisov does not have ties to a government entity?

18              MR. NEFF:  We have no evidence, your Honor, that he

19      has any ties to a government entity.

20              THE COURT:  Would the government like to be heard on

21      sentence?

22              MR. NEFF:  Just extremely briefly, your Honor.

23              This is a crime that's hard to detect.  Those who

24      commit it are hard to identify and locate.  Unfortunately, the

25      crime is harmful and it's profitable.  Considering that

 1  combination of sentencing factors, as well as for the reasons

 2  in our submission, we would respectfully submit that a

 3  guidelines sentence is appropriate in this case.

 4          THE COURT:  Thank you.

 5          Who is going to be speaking for defendant, Mr. Bukh or

 6  Mr. Grasso?

 7          MR. GRASSO:  I will, your Honor.

 8          Your Honor, my client, Mr. Lisov, is a very talented

 9  and intelligent person.  Equally as important, he is a

10  genuinely kind-hearted person.  This is evidenced throughout

11  the many letters written by the people who have known Mr. Lisov

12  most intimately in life, which letters have now been submitted

13  for your Honor's consideration in this proceeding.

14          Mr. Lisov's genuine good nature is indicated by his

15  behavior and having gone above and beyond to take care of his

16  family and other fellow human beings throughout his life, and

17  all in spite of a multitude of horrific challenges that

18  Mr. Lisov experienced in his own life, challenges that we are

19  mostly fortunate to be spared from encountering in this country

20  on such a personal, gruesome, and trying level.

21          When he was born, Mr. Lisov's family lived in the city

22  of Grozny, a former Checheno-Ingush Autonomous Soviet Socialist

23  Republic.  It was there where Mr. Lisov was raised by his

24  loving parents when at the tender age of six the family was

25  forced to escape the massacre caused by the Chechen Islamic

1   fundamentalists who declared and forged a war against Russia

2   and the entire Christian world.

3        At just six years old Mr. Lisov was exposed to things

4   that no human being should ever have to experience.  To this

5   day he can still vividly almost photographically remember the

6   scenes of beheaded human beings and the dismembered corpses of

7   Russian soldiers on the streets of Grozny.

8        As Russians, and Christians to boot, Mr. Lisov's

9   family stood no chance of survival under the circumstances of

10  that abominable time and place in history.  Thus, as refugees

11  of a brutal and ongoing war, his parents quickly moved from

12  Grozny to Timashyovsk, a small provincial city in Russia where

13  the family faced numerous financial hardships.

14       Mr. Lisov spent the years of his youth in unambiguous

15  poverty as the family was trying to make ends meet.  Against

16  all odds, Mr. Lisov and his family managed to survive through

17  the ethics of hard work, resilience, and discipline, and in no

18  small part due to Mr. Lisov's own initiative to embody such

19  universal values, all the while doing whatever he could,

20  whenever he could, wherever he could to take care of the ones

21  whom he loved and to help keep his family safe and intact.

22       Today my client, Mr. Lisov, stands in front of your

23  Honor with a heart full of regret and humility.  He has fully

24  accepted responsibility for his crimes.  Seeking repentance he

25  fully understands and recognizes that his actions led to the

necessity of the government's expenditure of valuable resources
in order to investigate and prosecute him.  This is only one
reason why Mr. Lisov is exceptionally embarrassed and honestly
humiliated by his actions.

He acknowledges, understands, and regrets any
suffering that he may have laid upon the real people, albeit
faces unknown, that were victimized by his crimes, having truly
recognized that the wires, networks, routers that most of us
take for granted as mere plastic cogs are actually incredible
tools that have the capacity to greatly impact people's lives
in many ways, good and bad, but the bad made all that much
worse when the dehumanization of real people so easily occurs
when such crimes are committed behind a digital screen and a
keyboard.

All of this being said at this point, I respectfully
beseech the Court to take these critical factors into
consideration, and I would like to note that the Court, under
Title 18 of the United States Code, Section 3553(a), does have
the discretion to consider a downward departure.  Again, I
would urge the Court to take these factors into consideration.

Mr. Lisov has been detained as a result of the offense
underlying these proceedings since his arrest in Spain on
January 13, 2017.  It is respectfully submitted that this
almost three years of incarceration has served as a quite
powerful deterrent for Mr. Lisov and, additionally, has sent a

1    clear message to a particular cyber subculture that such

2    behavior will not be tolerated by U.S. law enforcement nor the

3    courts of the United States of America.

4         It should also be noted that Mr. Lisov deserves to

5    receive credit for the time that he spent imprisoned in Spain

6    during his honeymoon, no less, and adjusted with a 1.5

7    multiplier in rectifying or offsetting his sentence as an

8    inherent result of the much harsher conditions of confinement

9    in Spain.

10        Mr. Lisov, the defendant in this matter, is a

11   first-time offender.  This is his first contact with the

12   criminal justice system.  And any sort of recidivism,

13   especially in light of the foregoing summary of events, is

14   extremely unlikely.

15        Mr. Lisov longs for the day of his liberty --

16        THE COURT:  I'm sorry.  Let me just interrupt you for

17   a second.  You are asking for a 1.5 multiplier on the time he

18   spent in Spain.  What was so horrible about Spain?

19        MR. GRASSO:  My understanding, Judge, is that because

20   he challenged extradition at the time that he was in Spain, he

21   was moved to a facility that was less than subpar in terms of

22   the mere human conditions.  More specifically, my understanding

23   from Mr. Lisov, and based on the records in this case, is that

24   while he was incarcerated in Spain, after challenging his

25   extradition, he was subjected to a kind of confinement that was

particularly uncomfortable, cruel, and specifically designed to
dehumanize his very spirit.

Continuing.  As alluded to earlier, Mr. Lisov has very
strong family ties.  His family and friends have been
supporting him since his arrest.  Your Honor has read his
letters of support and has seen firsthand that this man is a
truly remarkable, caring, and reliable human being.  A man who
is also smart enough to recognize, regret, and uniquely poised
to understand and appreciate the ramifications of his own bad
decisions, which decisions will haunt him for the rest of his
days.

In closing, considering the extent and circumstances
of Mr. Lisov's life, his demonstration of unequivocal
understanding and remorse, as well as his upstanding and
aspired personal characteristics and tragic background history,
I hereby respectfully request that the Court impose a
nonguidelines sentence of time served.

In pertinent part, Title 18 of the United States Code,
Section 3553(a) states that a sentence should be sufficient but
not greater than necessary to achieve the delineated purposes
of sentencing.

The sentence that I now propose not only conforms to
the integrity of that statute and is in accordance with the
rule of law, but it would also permit Mr. Lisov to begin
rebuilding his life, a life that, no doubt, has been marred by

1    some great mistakes, but a life which may ultimately be defined

2    by great moral and scientific achievements which, to a man as

3    humble as he, may very well merely consist of the simplicity of

4    caring for his beloved family.  Thank you, your Honor.

5              THE COURT:  Thank you.

6              Mr. Lisov, would you like to be heard.

7              THE DEFENDANT:  I would like to add some words.

8              THE COURT:  Now is your time.

9              THE DEFENDANT:  First of all, I want to add some words

10   about Spain conditions.  For some reason, in Spain I got some

11   restrictions.  And I provide these documents to my lawyers.  I

12   think they supposed to attach the documents to docket.  It was

13   restriction for phone calls, for visits.  Not for all visits.

14   Only for communication visits through glass.  And I had less

15   phone calls than other inmates in Spain.  It was restricted for

16   my communications with my family and this is most important

17   things for me.  In Spain they also have cold water --

18             THE COURT:  They had cold water, not hot water in the

19   prisons?

20             THE DEFENDANT:  Yes.  Maybe because they think it's a

21   hot country, but it's not so hot sometimes.

22             I would like to say some words.  Your Honor, thank you

23   for a chance to express my thoughts and apology.

24   Unfortunately, I made very serious mistakes.  I'm deeply

25   ashamed of this whole situation and my short-sided actions.

1          I would like to say also that, first of all, to all

2     the victims, I sincerely apologize to this Court, to the

3     government, and, most importantly, to my family, who is left

4     without my help and support due to my wrong decisions.

5          I promise to never step on this terrible path of

6     wrongdoing again and will, of course, never again forget this

7     harsh lesson.

8          I am going to pursue my life values and any criminal

9     activity will never again be a part of my life.  I would like

10     to ask you for a chance to reunite with my family as soon as

11     possible to start building my life.  Thank you, your Honor.

12          THE COURT:  Thank you, Mr. Lisov.

13          Mr. Lisov, federal law requires me to consider the

14     nature and circumstances of your offense and the history and

15     characteristics of you.

16          In terms of you, you are a 34-year-old Russian

17     citizen.  You have the equivalent of a master's degree, what we

18     would view as a master's degree, and you are married.  Although

19     you experienced the trauma of the beginning of the Chechen War,

20     by all accounts, you were raised in an intact family.  You may

21     have been poor, but you had an intact family.  You had parents

22     who cared about you.  You have a sister.  And you seem to be

23     close to your family.

24          As far as I can tell, the only motive for this crime

25     was greed.  You had a job and you had the ability to get a job

and, yet, you opted to use your considerable talent to break

into computers and steal people's personal information so their

money could be stolen from their bank accounts and brokerage

accounts.

However sterile this may have seemed to you just

sitting behind a computer screen in Russia, it caused real

injury to the affected customers. Moreover, the banks who

experienced the actual losses and have to make good for their

customers, that increases the cost of goods and services for

everybody because rather than investing their money the way

it's supposed to, to further their business, they are paying

off losses that have been stolen by people sitting in Russia

hacking into the system.

Taking all of that into account, federal law requires

me to impose a sentence that is reasonable and no greater than

necessary to accomplish all of the goals of sentencing. I have

considered all of the sentencing factors as well as the

guidelines.

In terms of what was most important to me, first and

foremost, this was a very serious offense. You and your

conspirators were using your talent to steal from people

everywhere. Defensive efforts to avoid this sort of crime cost

everyone money, but it also causes everyone aggravation. Banks

and brokerage accounts now recommend and some even insist on

dual-source authentication to try to thwart the sort of tools

1    that you were using.  I don't even know if it works to thwart

2    them.  Maybe it does.  Maybe it doesn't.  If the slightest

3    oddity happens in an account because they are concerned that

4    it's been hacked, they will freeze the account.  That may block

5    out the thieves, but it's also a major aggravation for the

6    customer who now doesn't have access to their own assets.

7            And all of this is because people like you, who have a

8    lot of talent and can design these tools, have figured out a

9    way to steal money without having to go into a bank with a gun

10   and take money from the teller, but it's every bit as much a

11   theft.

12           I have considered the need to promote respect for the

13   law.  I appreciate the fact that Mr. Lisov pled guilty and he

14   pled guilty early.  I am not sure whether that was a matter of

15   respect for the law or just that he saw the handwriting on the

16   wall and decided that he wanted to end this criminal case as

17   quickly as possible.

18           I have considered the need to provide just punishment

19   for this offense while avoiding unwarranted disparities between

20   similar defendants.

21           Mr. Lisov, one of the things that I am supposed to

22   take into account is what do other people who committed a

23   similar crime, what is their sentence?

24           In this particular case you pled guilty to a 371

25   count, which caps your exposure at five years.  That

automatically sort of sets a limit on how high your sentence can be, whereas a lot of people who hack into computers get sentences that are many times the maximum that you are looking at. So I have taken that into account.

I have considered the need to deter criminal conduct. In terms of deterrence, we think of two types of deterrence. How do we deter you. That's called specific deterrence. And how do we deter people generally. It's called general deterrence. How do I send the message to your colleagues in Russia or your colleagues in the United States, your colleagues in the world of hacking into computers that this is just not acceptable, that if you get caught, you are looking at very serious time because this is a very serious crime. That's the general deterrent issue. The specific deterrent issue is how do I make sure that you have heard the message loud and clear that you've got to use your talent for legitimate pursuits and not for hacking. That's specific deterrence.

You have now spent a substantial amount of time in United States prisons. Maybe they are better than Spanish prisons, maybe they are not. Maybe they are better than Russian prisons, maybe they are not. I don't know.

What I do know is, you are locked away from your family. You have just been married. You have been locked away from your wife. You have got to understand that if you do this again and you get caught again, there is going to be a lot

1    longer time that you are going to be locked up, whether it's in

2    the United States, because you get caught here, or whether it's

3    somewhere in the European union because you're got there, or

4    whether it's in Russia because you're caught in Russia.  I

5    don't know.  But you have got to recognize that you have got to

6    use your talents to do other things than to steal from people.

7              I don't see any particular threat to the public, and I

8    don't see any particular need to get Mr. Lisov new skills.

9    Mr. Lisov has all the skills he needs.  He just needs to use

10   them for good and not for ill.

11             Based on all of my consideration of the sentencing

12   factors, I am going to accept the recommendation of probation.

13   I think the guidelines sentence is somewhat longer than

14   necessary to achieve the goals of sentence and, therefore, I am

15   going to vary downward.

16             Mr. Lisov, I am going to sentence you to the custody

17   of the Attorney General for a period of 48 months to be

18   followed by a period of supervised release of three years.

19   That's likely to be irrelevant because you are likely to be

20   deported at the end of your sentence and will not likely be

21   allowed to return to the United States within that first three

22   years.  But it's possible that, for whatever reason, you won't

23   be deported, who knows what's going to be going on between us

24   and Russia at the point in time when it would be due.  And you

25   may be paroled into the United States.  If that happens, you're

1    on supervised release.

2         There are mandatory conditions of supervised release.

3    You must not commit another crime.  You must not illegally

4    possess a controlled substance.  You cannot possess a firearm

5    or other destructive device.  I'm waiving mandatory drug

6    testing because I think the risk of drug abuse is low.  And you

7    must cooperate in the collection of DNA.

8         In addition to the standard conditions of supervised

9    release I am imposing the following special conditions:  The

10   defendant must provide the probation office with access to any

11   requested financial information.  The defendant must not incur

12   new credit charges or open additional lines of credit without

13   the approval of the probation officer unless you are in

14   compliance with the installment payment schedule.

15        You must permit and authorize the probation office to

16   install any application or software that allows it to surveil

17   or monitor all activity on any computer, automated service, or

18   connected device that defendant will use during the term of

19   supervision that can access the Internet.  Tampering with or

20   circumventing the monitoring capability is prohibited.  To

21   ensure compliance with this condition you must allow the

22   probation office to conduct initial and periodic unannounced

23   examination of any device that is subject to monitoring.  You

24   must notify any other persons who are using the devices that

25   they are subject to monitoring.

1           You must provide the probation office with advanced

2     notification of the planned use of any device.  You cannot use

3     any device without approval until compatibility with the

4     probation department's monitoring capability and installation

5     is complete.  Applications for your device must be approved by

6     the probation office once the probation office assures

7     compatibility with the surveillance and monitoring applications

8     or software.

9           Websites, chat rooms, messaging, and social networking

10    sites shall not be accessed via the device's web browser unless

11    otherwise authorized.  You will not create or access any ISP

12    account or any online service under someone else's name,

13    account, or designation or alias.  You will not utilize any

14    peer-to-peer or file-sharing applications without permission of

15    your probation office.  The use of any devices in the course of

16    employment will be subject to monitoring or restriction, as

17    permitted by your employer.

18          You must submit your person, residence, place of

19    business, vehicle, electronic devices or other premises that

20    are under your control to search if the probation officer has a

21    reasonable belief that contraband or evidence of a violation of

22    conditions of release may be found there.  Any search must be

23    conducted at a reasonable time and in a reasonable manner.

24    Failure to submit to search may be grounds for revocation, and

25    the defendant must inform any other residents that the premises

1   may be subject to search pursuant to this condition.

2          You must obey the immigration laws and comply with the

3   directives of the immigration authorities.  You must report to

4   the nearest probation office within 72 hours of release, and

5   you will be supervised by the district of residence.

6          I am not imposing a fine because I find there is no

7   ability to pay a fine.

8          I was previously, Mr. Neff, been given a proposed

9   order of forfeiture.

10          MR. NEFF:  It should be identical, except now it's

11   signed by the defense.

12          THE COURT:  Perfect.  There is also an order of

13   restitution, is that correct?

14          MR. NEFF:  That's correct, your Honor.  Submitted via

15   e-mail.

16          THE COURT:  Mr. Lisov, you are ordered to forfeit, per

17   your agreement, $50,000 in United States currency to the United

18   States Government.  You are also required to pay restitution to

19   the victims of your crime in the amount of $481,388.04.

20   Payments will be need to be made during the period of your

21   incarceration consistent with Bureau of Prisons' policies.  I

22   must impose a $100 special assessment.

23          Do you have any requests for designation?  I will tell

24   you that my guess is, he is not going to be moved because given

25   the amount of time that he has already been in, he doesn't have

1   that much left.  But he might get moved out of the MCC or MDC,

2   wherever he is.

3            Does he have a request for designation?

4            MR. GRASSO:  No, your Honor.

5            THE COURT:  Mr. Lisov, to the extent you have not

6   given up the right to appeal your sentence through your plea of

7   guilty and the agreement you entered into with the government

8   in connection with that plea, you have the right to appeal your

9   sentence.  If you are unable to pay the cost of an appeal, you

10  may apply for leave to appeal *in forma pauperis*.  The notice of

11  appeal must be filed within 14 days of the judgment of

12  conviction.

13           Anything further, Mr. Neff?

14           MR. NEFF:  Yes, your Honor.  We move to dismiss all

15  open counts, which should just be Count Two, please.

16           THE COURT:  The open counts are dismissed.

17           MR. NEFF:  Thank you, Judge.

18           THE COURT:  Anything further from the defense?

19           MR. GRASSO:  Yes, your Honor.  Just briefly.  I would

20  like to ask how the Court is calculating the sentencing time.

21           THE COURT:  The Bureau of Prisons calculates.  I

22  don't.  But here is why I said what I said.  He will get credit

23  for the time that he spent in jail in Spain.  That's in

24  accordance with federal law.  So his sentence calculation will

25  then begin on the date of his arrest, which was January 2017.

1   We are almost to January 2020, so that's three years.  With

2   good time -- I don't know what the good-time calculation is

3   anymore, but all of that is a long-winded way of saying I don't

4   know if they are going to move him or not.  They may keep him

5   in the cadre at MCC.

6          MR. GRASSO:  Understood.  Thank you, Judge.

7          THE COURT:  Again, I'm happy to make a designation if

8   he would like to see some other part of the United States while

9   he is here.

10          THE DEFENDANT:  No.  I saw Manhattan and Brooklyn.

11   I'm all right.

12          THE COURT:  You have seen through a window of

13   Manhattan and Brooklyn.

14          THE DEFENDANT:  Of course.

15          THE COURT:  Mr. Lisov, I wish you the best of luck.

16   Stay off computers that are breaking into the United States

17   banks.

18          Thank you, all.

19          (Adjourned)

20

21

22

23

24

25